**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
*Electronically Filed*

DISH NETWORK L.L.C. and SLING TV L.L.C.,

Plaintiffs,

v.

KEVIN HIBDON, Individually and d/b/a LOUISVILLE MEDIA BOX
Serve: Kevin Hibdon
9599 Highway 44 East
Mount Washington, KY 40047

and

JAMES DUSTIN MEADOWS, Individually and d/b/a LOUISVILLE MEDIA BOX
Serve: James Dustin Meadows
918 Capital Hills Drive
Jeffersonville, IN 47130,

Defendants.

Case No. 3:21-cv-655-DJH

**PLAINTIFFS' COMPLAINT**

Plaintiffs DISH Network L.L.C. ("DISH") and Sling TV L.L.C. ("Sling") (collectively, DISH and Sling are referred to as the "Plaintiffs"), bring this action against Defendants Kevin Hibdon ("Hibdon") and James Dustin Meadows ("Meadows") (collectively Hibdon and Meadows are referred to as the "Defendants"), for circumventing and providing technologies, equipment, and services that circumvent the security measures employed by Sling, and thereby provide DISH's television programming to Defendants' customers without authorization. Defendants' actions violate the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et seq*. ("DMCA").

## NATURE OF THE ACTION

1. DISH and Sling are television service providers that deliver programming live and on demand to millions of authorized, fee-paying subscribers in the United States using security technologies provided by content protection providers. Defendants traffic in access codes to and/or operate or facilitate the operation of illicit streaming services. Under the Louisville Media Box ("LMB") banner Defendants are selling subscriptions or access codes and set-top-boxes ("STBs") or portable streaming devices ("PSBs") designed to enable access to pirate television services which allow Defendants' customers access to Plaintiffs' transmissions of television programming by providing the means to decrypt and acquire it without authorization.

## PARTIES

2. Plaintiff DISH Network L.L.C. is a Colorado limited liability company organized having its principal place of business in Englewood, Colorado.

3. Plaintiff Sling TV L.L.C. is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

4. Defendant Kevin Hibdon is an individual believed to be residing at 9599 Highway 44 E., Mount Washington, Kentucky 40047, Bullitt County.[1]

5. Defendant James Dustin Meadows is an individual believed to be residing at 918 Capital Hills Dr., Jeffersonville, Indiana 47130, Clark County.

[1] The allegations made by Plaintiffs concerning the whereabouts and wrongful conduct of Defendants are based on the investigation completed to date, and with the reasonable belief that further investigation and discovery in this action will lead to additional factual support. Therefore, Plaintiffs reserve the right to supplement or amend their claims and the basis for those claims, with leave of court if necessary, as additional investigation and discovery is conducted.

## JURISDICTION AND VENUE

6. DISH and Sling are claiming violations of the DMCA. Subject matter jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 1338.

7. Defendants are subject to personal jurisdiction in this Court because Hibdon is believed to reside in this judicial district, can be found in this judicial district and is subject to *in personam* jurisdiction here, and because Defendants have each purposefully directed their conduct towards, and have each purposefully availed themselves of the privileges of conducting business activities within the Commonwealth of Kentucky by selling their infringing technologies, devices, and services to Defendants' customers in the Commonwealth of Kentucky, including at State Fairs and trade events in Kentucky, and circumventing the security measures employed by Sling, thereby allowing Defendants' customers to receive Plaintiffs' television programming without authorization and causing injury to DISH and Sling in the Commonwealth of Kentucky.

8. The Court is a proper venue under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district. Venue is also appropriate in this Court under 28 U.S.C. § 1400(a) because Plaintiffs assert claims relating to the protection of copyrighted works.

## DEFENDANTS' REBROADCASTING SCHEME

### *Plaintiffs' Programming*

9. DISH is the fourth largest pay-television provider in the United States and delivers television programming to millions of subscribers nationwide.

10. Sling is a subsidiary of DISH and a pay-television provider in the United States that delivers television programming to millions of subscribers nationwide using the public internet ("Sling Programming"). Sling's internet transmissions of Sling Programming are secured using

digital rights management ("DRM") technologies that include, based upon the subscriber's viewing platform, Google's Widevine DRM, Apple's FairPlay DRM, and Microsoft's PlayReady DRM. Each DRM has a key-based encryption and decryption process that is used to make Sling Programming accessible to only authorized Sling subscribers that purchased access to that Sling Programming and restricts unauthorized access to, copying, and retransmission of Sling Programming.

11. DISH and Sling broadcast, among other things, movies, sports, and general entertainment services to consumers who have been authorized to receive such services after paying a subscription fee, or in the case of a pay-per-view movie or event, the purchase price.

12. DISH contracts for and purchases distribution rights for the programming that is broadcast on the Sling platform, including Sling Programming, from network affiliates, motion picture distributors, pay and specialty broadcasters, cable networks, sports leagues, and other holders of programming rights. The works broadcast by Sling are copyrighted.

*Unauthorized Rebroadcasting of Plaintiffs' Programming*

13. Defendants' pirate streaming services, including but not limited to Venom and PrimeStreams (the "Pirate Services"), are preloaded onto Defendants' STBs and PSDs which are marketed and sold by Defendants under the LMB banner at trade shows, State Fairs, and through Defendants' Facebook pages.

14. Meadows advertises LMB on Facebook stating that for $10 a month an LMB customer can have over 3,500 channels, with "Premium, PPV and Sports Channels Included." *See* https://www.facebook.com/photo.php?fbid=826326041114917&set=pb.100012125857507.-2207520000..&type=3

Dustin Meadows
November 1, 2019
We are now at 5 connections for $20 per. Month
Free 1 month trials as well
Kevin Cableman Hibdon

AVAILABLE ON
ANDROID, FIRE DEVICES, XBOX, PC, MAC
YOU WILL NOT FIND ANYTHING BETTER
LOUISVILLE MEDIA BOX
3500+ CHANNELS INCLUDING LOCALS
IPTV
WILL ALSO WORK ON SMART TV'S LIKE SAMSUNG AND LG
INTERNET REQUIRED
PREMIUM, PPV AND SPORTS CHANNELS INCLUDED
Just $10/MO When you buy 6 or More Months
$10 A Month
NO CREDIT CHECK
PAY AS YOU GO
CANCEL ANYTIME
Why Pay More?
(502) 408-8909
Cut The Cord and Your Bill!

10
23 Comments 7 Shares
Like Comment Share




15. Likewise Hibdon has advertised on Facebook that LMB's boxes provide:

> "Access to every station including movie channels and locals. Has over 11,000 movies on demand. That's three times more content than Netflix. Also a server with over 1500 different shows that you can watch with one click on demand. Set up your own favorites with the simple click if you got any more questions pm me."

*See* https://www.facebook.com/kevinchibdon/posts/3542003495908802




16. Hibdon further advertised LMB's streaming devices, pre-loaded with the access codes to the unauthorized content, by touting: "Ditch your TV bill today. Check out the new app" with a picture of one of LMB's STBs. Hibdon also posted that he was watching Hubie Halloween, but "NOT ON NETFLIX THOUGH don't need a netflix account to watch it. Octastream has it all." Octastream is a STB which Defendants pre-load with the Pirate Services. On the same Facebook thread Hibdon further posted "I was saying that I don't watch it on netflix because netflix is a waste of money."

*See* https://www.facebook.com/kevinchibdon/posts/3174013572707798




17. Sling Programming has been retransmitted on Defendants' Pirate Services without Plaintiffs' authorization, thereby allowing Defendants' customers to receive such programming without paying the requisite subscription fee to Sling.

18. The Sling Programming retransmitted on the Pirate Services is received from Sling's internet transmissions. Identifiers unique to the television broadcasts of Sling were detected when viewing Sling Programming on the Pirate Services, including the following channels by example: FX, MLB Network, Pursuit, DUST, Ride TV, and EPIX Drive-In, confirming Sling's internet transmissons are the source of the Sling Programming retransmitted on the Pirate Services.

19. On information and belief, Defendants directly engage in, aid and abet, or act within the scope of a principal-agent relationship with other persons in establishing and controlling Sling subscription accounts used to obtain the Sling Programming retransmitted on the Pirate Services.

20. On information and belief, Defendants directly engage in, aid and abet, or act within the scope of a principal-agent relationship with other persons in the circumvention of DRMs that control access to Sling Programming in order to retransmit Sling Programming on the Pirate Services.

*Defendants' Sale of Equipment and Device Codes*

21. Defendants profit from the Rebroadcasting Scheme through the sale STBs and PSDs preloaded with the Pirate Services, and codes ("Device Codes") that are designed and produced to enable the STBs, PSDs, or other internet-enabled device to access servers used to retransmit Sling Programming on the Pirate Services. A valid Device Code is required to access the Pirate Services preloaded on Defendants' STBs and PSDs.

22. Defendants sold their preloaded STBs for prices ranging from $250 to $275.

23. Defendants sold thirty-four (34) pre-loaded STBs on a single day in September 2020.

*See* https://www.facebook.com/kevinchibdon/posts/3087388961370260




24. Defendants sell additional Device Codes for their customers' STBs and PSDs at the rate of five (5) connections for $20 a month.

*See* https://www.facebook.com/photo/?fbid=823759811371540&set=a.645960375818152




25. In March 2021 Plaintiffs retained the services of an investigative firm to purchase a Firestick from Defendants. The Firestick was preloaded with a twelve (12) month Venom Platinum subscription. The purchase was made through PayPal, and the payment recipient was "Dustin's Traveling Barber Services" with an email address of jamesdustinmeadows@gmail.com.

26. The investigator who made the purchase also received an email from Hibdon, from the email address kevintreetrunk@gmail.com, regarding an upcharge for the pre-loaded Firestick and the twelve (12) month subscription to the Venom piracy streaming service.

27. The investigative firm also recorded multiple telephone conversations wherein Defendants provided account log-in and password information for the Pirate Services provided by Defendants on the pre-loaded PSD.

28. Plaintiffs sent Defendants Cease and Desist Letters in April and June 2021. In response Defendants assured Plaintiffs that they had ceased their illicit conduct.

29. However Defendants have continued to sell preloaded STBs and PSDs along with Device Codes to the Pirate Services, notwithstanding their representations to the contrary.

30. In October 2021 an investigator contacted Defendants to inquire and about purchasing a preloaded STB. Defendants told the investigator that they would sell a STB to him for $275, that they're preloaded with a service "with Sports, PPV, and Showtime. You will see a code scroll along the top of the screen. The code is the device code for your box. It will go away after a while. Plus it's all free." The investigator was further informed that the Device Codes were for the PrimeStream service, which is one of the Pirate Services available on Defendants' preloaded STBs and PSDs.

## CLAIMS FOR RELIEF

## COUNT I

### Circumventing Technological Measures in Violation of the DMCA, 17 U.S.C. § 1201(a)(1)(A)

31. DISH and Sling repeat and reallege the allegations in paragraphs 1-30.

32. Sling uses technological protection measures, including its DRM technologies, to effectively control access to Sling Programming, which includes works protected under the Copyright Act. Sling implements these technological protection measures with the copyright owners' consent.

33. Defendants circumvent Sling's DRM technologies protecting Sling Programming each time they obtain the DRM keys necessary to decrypt the Sling Programming and each time a DRM key is sent to them by using the Pirate Services to display Sling Programming during testing and for Defendants' own viewing pleasure without authorization from Sling or DISH.

34. Defendants willfully violated 17 U.S.C. § 1201(a)(1)(A) for the purpose of commercial advantage and private financial gain. Defendants knew or should have known that their actions are illegal and prohibited.

35. Defendants' violations cause damage to DISH and Sling in an amount to be determined through discovery and at trial.

36. Unless enjoined by the Court, Defendants will continue to engage in acts causing substantial and irreparable injury to DISH and Sling that includes damage to their reputation, loss of goodwill, and lost sales, for which there is no adequate remedy at law.

**COUNT II**

**Trafficking in Circumvention Technology and Services in Violation of the DMCA, 17 U.S.C. § 1201(a)(2)**

37. DISH and Sling repeat and reallege the allegations in paragraphs 1-36.

38. Defendants have manufactured, imported, offered to the public, provided, and otherwise trafficked in technologies, products, and services in violation of 17 U.S.C. § 1201(a)(2), including through their operation of and trafficking of preloaded STBs, PSDs, and Device Codes to the Pirate Services that allow Defendants' customers to circumvent the security measures employed by Sling's DRM technologies protecting Sling Programming, and thereby receive Sling Programming without authorization from Sling or DISH.

39. Defendants' technologies, products, and services are primarily designed and produced for purposes of circumventing DRM technology security measures employed by Sling;

have no commercially significant purpose or use other than circumventing those security measures; and are marketed by Defendants and others known to be acting in concert with them for use in circumventing those security measures.

40. The security measures employed by Sling, which include DRM technologies, effectively control access to, copying, and distribution of copyrighted works. Defendants' actions that constitute violations of 17 U.S.C. § 1201(a)(2) have been performed without the authorization or consent of DISH, Sling, or, upon information and belief, any owner of the copyrighted content broadcast by DISH and Sling. DISH and Sling are authorized to protect the copyrighted content broadcast on the Sling platform from unauthorized viewing.

41. Defendants are liable for violations of 17 U.S.C. § 1201(a)(2) for each user of Defendants' Pirate Services.

42. Defendants willfully violated 17 U.S.C. § 1201(a)(2) for the purpose of commercial advantage and private financial gain. Defendants knew or should have known that their actions are illegal and prohibited.

43. Defendants' violations cause damage to DISH and Sling in an amount to be determined through discovery and at trial.

44. Unless enjoined by the Court, Defendants will continue to engage in acts causing substantial and irreparable injury to DISH and Sling that includes damage to their reputation, loss of goodwill, and lost sales, for which there is no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek judgment against Defendants as follows:

A. For a grant of permanent injunctive relief restraining and enjoining Defendants, and any of their officers, agents, servants, employees, attorneys, or any other persons acting in active concert or participation with any of the foregoing that receives actual notice of the order, from:

1. circumventing a DRM or any other technological protection measure that controls access to Plaintiffs' Programming, including through the use of the Pirate Services or any similar internet streaming service;

2. manufacturing, importing, offering to the public, providing, or otherwise trafficking in any technologies, products, or services, including the preloaded STBs, PSDs, and subscriptions or device codes to the Pirate Services, or any other service, technology, product, device, component, website, or part thereof that:

a. is primarily designed or produced for circumventing a technological measure employed by DISH or Sling that controls access to, copying, or the distribution of copyrighted works;

b. has only limited commercially significant purpose or use other than circumventing a technological measure employed by DISH or Sling that controls access to, copying, or the distribution of copyrighted works;

c. is marketed for purposes of circumventing a technological measure employed by DISH or Sling that controls access to, copying, or the distribution of copyrighted works;

3. receiving or assisting others in receiving Sling's internet transmissions; and

4. selling, leasing, licensing, assigning, conveying, distributing, loaning, encumbering, pledging, or otherwise transferring, whether or not for consideration or compensation, any part of their infringing operations.

B. For an order permanently transferring each domain name that Defendants used in connection with the infringement to DISH or Sling.

C. Award DISH and Sling the greater of their actual damages together with any profits of Defendants that are attributable to the violations alleged herein, or statutory damages of up to $2,500 for each violation of 17 U.S.C. §§ 1201(a)(1)(A) and 1201(a)(2), pursuant to 17 U.S.C. §§ 1203(c)(2) and 1203(c)(3)(A);

D. Award DISH and Sling their costs, attorney's fees, and investigative expenses pursuant to 17 U.S.C. § 1203(b)(4)-(5);

E. For a full and accurate accounting of all profits and other benefits received by Defendants as a result of the wrongful conduct described herein;

F. For pre and post-judgment interest on all damages awarded, from the earliest date permitted by law at the maximum rate permitted by law;

G. For such additional relief as the Court deems just and equitable.

Respectfully submitted,

/s/ Adrianne C. Strong

Adrianne C. Strong
Spencer K. Gray
DINSMORE & SHOHL LLP
100 West Main Street, Suite 900
Lexington, Kentucky 40507
Phone: (859) 425-1000
Fax: (859) 425-1099
Email: adrianne.strong@dinsmore.com
spencer.gray@dinsmore.com

and

Christopher P. Craven (*pro hac vice* to be filed)
HAGAN NOLL & BOYLE LLC
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Phone: (713) 343-0478
Fax: (713) 758-0146
Email: christopher.craven@hnbllc.com

*Counsel for Plaintiffs DISH Network L.L.C. and Sling TV L.L.C.*