# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

*Electronically Filed*

| | |
|---|---|
| DISH NETWORK L.L.C. and SLING TV L.L.C., | ) ) ) ) |
| Plaintiffs, | ) Case No. 3:21-cv-655-DJH-RSE ) |
| v. | ) ) ) |
| KEVIN HIBDON and JAMES DUSTIN MEADOWS, Individually and d/b/a LOUISVILLE MEDIA BOX, | ) ) ) ) |
| Defendants. | ) ) ) |

## PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

Pursuant to Federal Rule of Civil Procedure 55(b)(2), Plaintiffs DISH Network L.L.C. ("DISH") and Sling TV L.L.C. ("Sling," and collectively with DISH, "Plaintiffs") move for default judgment against Defendant James Dustin Meadows ("Defendant Meadows").

### I.    CASE SUMMARY

DISH and Sling, a subsidiary of DISH, are television service providers that deliver programming live and on demand to millions of authorized, fee-paying subscribers in the United States using security technologies provided by content protection providers. (Dkt. 1, Pls.' Compl. ¶ 1.) Sling delivers its television programming using the internet ("Sling Programming"). (*Id.*)

DISH and Sling broadcast, among other things, movies, sports, and general entertainment services to consumers who have been authorized to receive such services after paying a subscription fee, or in the case of a pay-per-view movie or event, the purchase price. (*Id.* ¶ 11.) DISH contracts for and purchases distribution rights for the programming that is broadcast on the Sling platform, including Sling Programming, from network affiliates, motion picture distributors, pay and

1

specialty broadcasters, cable networks, sports leagues, and other holders of programming rights. (*Id.* ¶ 12.) The works broadcast by Plaintiffs are copyrighted. (*Id.*)

Under the Louisville Media Box ("LMB") banner Defendant Meadows is trafficking device codes and set-top-boxes ("STBs") or portable streaming devices ("PSBs") designed to enable access to pirate streaming services which allow his customers to access Plaintiffs' transmissions of programming without authorization. (*Id.* ¶ 1.) Defendant Meadows' pirate streaming services, including but not limited to Venom and PrimeStreams (the "Pirate Services"), are preloaded onto STBs and PSDs which are marketed and sold under the LMB banner at trade shows, State Fairs, and through Defendant Meadows' Facebook pages. (*Id.* ¶ 13.)

Sling Programming has been retransmitted on the Pirate Services without Plaintiffs' authorization, thereby allowing Defendant Meadows' customers to receive such programming without paying the requisite subscription fee to Plaintiffs. (*Id.* ¶ 17.) The Sling Programming retransmitted on the Pirate Services is received from Sling's transmissions. (*Id.* ¶ 18.) Identifiers unique to the television broadcasts of Sling were detected when testing the Pirate Services, confirming Sling's internet transmissons are the source of the content. (*Id.*)

Defendant Meadows profits from this scheme through the sale STBs and PSDs preloaded with the Pirate Services, and codes ("Device Codes") that are designed and produced to enable the STBs, PSDs, or other internet-enabled device to access servers used to retransmit Sling Programming on the Pirate Services. (*Id.* ¶ 21.) A valid Device Code is required to access the Pirate Services preloaded on Defendant Meadows' STBs and PSDs. (*Id.*) Defendant Meadows sold Device Codes for $10 and $20 a month – depending on the amount of time the Device Code was active and the number of users that could connect to the Pirate Services using the Device Code. (*Id.* ¶¶ 14, 24.) Defendant Meadows continued selling Device Codes for over a year after suit was

filed, all while stalling the litigation by refusing to participate in discovery. (Craven Decl. ¶ 16, Exs. 5, 7-8; Dkt. 33.) His actions violate the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201, *et seq*.

Defendant Meadows was properly served with a copy of Plaintiffs' Complaint and respective Summons on November 3, 2021. (Dkt. 5.) On November 11, 2021, Defendant Meadows filed his Answer. (Dkt. 6.) On April 14, 2022, his counsel filed a Notice of Withdrawal, stating that "because [of] Mr. Meadows' inability to comply with the Federal Rules of Civil Procedure, [counsel] is unable to adequately defend Mr. Meadows' interests." (Dkt. 20.) On May 13, 2022, Plaintiffs filed a Motion for Sanctions Striking Defendant Meadows' Answer (the "Motion for Sanctions") due to his refusal to respond to discovery requests. (Dkt. 23.) On September 20, 2022, the Court entered a Show Cause Order against Defendant Meadows. (Dkt. 28.) On December 22, 2022, Magistrate Judge Regina Edwards issued a Report and Recommendation (the "R&R") recommending that Defendant Meadows' Answer be stricken and that the Clerk enter his default. (Dkt. 33.) On January 11, 2023, the Court issued an Order adopting the R&R, granting Plaintiffs' Motion for Sanctions, directing the Clerk to strike Defendant Meadows' Answer pursuant to Fed. R. Civ. P. 37(b)(2)(A)(iii), and to enter default pursuant to Fed. R. Civ. P. 55(a). (Dkt. 34.)

The Clerk entered default against Defendant Meadows on January 12, 2023. (Dkt. 35.) Default judgment is now appropriate.

## II.    ARGUMENT

### A.    Final Default Judgment Against Defendant Meadows is Now Ripe

The Court may enter default judgment against Defendant Meadows because he was properly served with Plaintiffs' summons and complaint, Defendant Meadows' answer was struck,

3

the Clerk entered default against Defendant Meadows, and Defendant Meadows is not a minor, incompetent, or exempt under the Servicemembers' Civil Relief Act. (Craven Decl. ¶¶ 4-8, Exs. 1-2.) *See* Fed. R. Civ. P. 55(b)(2) (setting forth procedural requirements for default judgment).

It is well established that once a default is entered against a defendant, that party is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110-11 (6th Cir. 1995). "The Court, however, still must determine whether the facts alleged in the Complaint are sufficient to state a claim for relief as to each cause of action for which the plaintiff seeks default judgment." *J & J Sports Prods., Inc. v. Rodriguez*, No. 1:08-CV-1350, 2008 WL 5083149, at *1 (N.D. Ohio Nov. 25, 2008). "In addition, where the damages sought are not for a sum certain, the Court must determine the propriety and amount of the default judgment." *Id*.

        **1.**      **Plaintiffs Properly Plead Defendant Meadows' Violations Under 17 U.S.C. § 1201(a)(1)(A) of the DMCA**

Section 1201(a)(1)(A) of the DMCA prohibits a person from circumventing a technological measure that effectively controls access to a work protected under the Copyright Act. 17 U.S.C. § 1201(a)(1)(A). To circumvent a technological measure "means to descramble a scrambled work, decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A). "[A] technological measure 'effectively controls access to a work' if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." *Id*. at § 1201(a)(3)(B).

Plaintiffs use digital rights management ("DRM") technologies to secure the internet transmissions of Sling Programming and the copyrighted works comprising such programming. (Compl. ¶¶ 10, 12, 32.) Each DRM has a key-based encryption and decryption process that is used

to make Sling Programming accessible to only authorized fee-paying subscribers and restricts unauthorized access to, copying, and retransmission of Sling Programming. (*Id.* ¶ 10.) Encryption-based security technology constitutes an effective access control measure for purposes of the DMCA. *See Universal City Studios, Inc. v. Reimerdes*, 111 F.Supp.2d 294, 318 (S.D.N.Y. 2000) (holding that security measures based on "encryption or scrambling" are effective for purposes of the DMCA).

Defendant Meadows circumvented Sling's DRM technologies protecting Sling Programming each time he obtained the DRM keys necessary to decrypt the Sling Programming, and each time a DRM key was sent to him by using the Pirate Services to display Sling Programming during testing, and for his own viewing without authorization from Plaintiffs. (Compl. ¶¶ 17-20, 33; Gedeon Decl. ¶¶ 4-6.)

By circumventing Sling's DRMs, Defendant Meadows violated section 1201(a)(1)(A) of the DMCA. (Compl. ¶¶ 31-36.) *See DISH Network, L.L.C. v. SatFTA*, No. 5:08-cv-01561 JF (PSG), 2011 WL 856268, at *3-4 (N.D. Cal. Mar. 9, 2011) (granting summary judgment on section 1201(a)(1)(A) claim where defendant modified DISH's smartcards to bypass that security technology and access DISH programming); *DISH Network LLC v. Rama*, No. 14-cv-04847-WHO, 2015 WL 217135, at *1-2 (N.D. Cal. Jan. 14, 2015) (finding allegations that defendant circumvented DISH's key-based security system adequately pleaded a violation of section 1201(a)(1)(A)); *Disney Enterprises, Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957, 968-69 (C.D. Cal. 2016) (granting preliminary injunction and finding a strong likelihood of success on section 1201(a)(1)(A) claim based on defendant circumventing scrambling technology that protected DVDs and Blu-ray discs for purposes of providing that content to users of their service).

Accordingly, Plaintiffs' well-pleaded allegations, which are taken as true, establish that Defendant Meadows violated 17 U.S.C. § 1201(a)(1)(A).

### 2. Plaintiffs Properly Plead Defendant Meadows' Violations Under 17 U.S.C. § 1201(a)(2) of the DMCA

Defendant Meadows' actions also violate 17 U.S.C. § 1201(a)(2) as plead in Count II of Plaintiffs' complaint. Section 1201(a)(2) prohibits trafficking in any technology, service, or part thereof that: (1) is designed or produced for circumventing a measure that effectively controls access to a copyrighted work; (2) has only limited commercial purpose or use other than circumventing an access control measure; or (3) is marketed for use in circumventing an access control measure. 17 U.S.C. § 1201(a)(2). To circumvent an access control measure "means to descramble a scrambled work, to decrypt an encrypted work, or to otherwise avoid, bypass, remove, deactivate, or impair a technological measure." *Id.* § 1201(a)(3)(A). Encryption-based security technology constitutes an effective access control measure for purposes of the DMCA. *See Universal City Studios, Inc.*, 111 F.Supp.2d at 318 (holding that security measures based on "encryption or scrambling" are effective for purposes of the DMCA).

The DMCA applies to various piracy instruments, including passcodes. *See* 17 U.S.C. § 1201(a)(2) (encompassing "any technology, product, service, device, component, or part thereof"); *DISH Network L.L.C. v. Barnaby*, No. 3:15-cv-00492-TAV-HBG, 2016 WL 6603202, at *3 (E.D. Tenn. Nov. 8, 2016) ("courts have held that the DCMA applies to various piracy instruments including passcodes"); *DISH Network L.L.C. v. DiMarco*, No. 2:11-cv-01962, 2012 WL 917812, at *5 (D. Nev. March 14, 2012) (finding DMCA applicable to the distribution of passwords used to access IKS server); *DISH Network L.L.C. v. Dillion*, No. 12cv157 BTM(NLS), 2012 WL 368214, at *3-4 (S.D. Cal. Feb. 3, 2012) (finding DMCA applicable to piracy-enabling software files); *DISH Network L.L.C. v. Ward*, No. 8:08-cv-590-JSM-TBM, Dkt. 77 at 11-14 (M.D. Fla.

Jan. 8, 2010) (same) (attached to Craven Decl. at Ex. 10); *see also Actuate Corp. v. IBM Corp.*, No. C-09-05892 JCS, 2010 WL 1340519, at *9 (N.D. Cal. Apr. 5, 2010) (holding the "unauthorized distribution of passwords and usernames avoids and bypasses a technological measure in violation of section[] 1201(a)(2)").

Plaintiffs adequately plead a claim for relief under section 1201(a)(2) of the DMCA. According to the complaint, Defendant Meadows sold Device Codes to his customers. (Compl. ¶¶ 21, 24, 38.) The Device Codes enabled Defendant Meadows' customers to circumvent the security measures employed by Sling's DRM technologies protecting Sling Programming. (*Id.* ¶¶ 1, 38; Gedeon Decl. ¶¶ 4-5) Defendant Meadows' Device Codes are primarily designed and produced for purposes of circumventing DRM technology security measures employed by Sling, and have no other commercially significant purpose or use. (Compl. ¶ 39; Gedeon Decl. ¶ 6.) Plaintiffs allege that Defendant Meadows intended for his Device Codes to be used in the unauthorized circumvention of DRM technological security measures of employed by Sling, and knew or at least should have known they were used primarily in this unlawful manner. (Comp. ¶ 42.) Plaintiffs also allege that the security measures employed by Sling effectively control access to, copying, and distribution of copyrighted works, and that DISH and Sling are authorized to protect the copyrighted content broadcast on the Sling platform from unauthorized viewing. (*Id.* ¶ 40.) Altogether, the allegations in Plaintiffs' complaint, which are accepted as true, establish that defendant trafficked in Device Codes in violation of the DMCA. *See Barnaby*, 2016 WL 6603202, at *3. As such, Plaintiffs are entitled to default judgment as to their section 1201(a)(2) claim.

**B.     Plaintiffs Should be Awarded Statutory Damages Against Defendant Meadows**

The DMCA authorizes Plaintiffs to recover statutory damages for each of Defendant Meadows' violations of section 1201(a)(1)(A) and 1201(a)(2) "in the sum of not less than $200 or

7

more than $2,500." 17 U.S.C. § 1203(c)(3)(A). Such damages may be awarded at the default judgment stage without conducting a hearing provided that "the amount claimed is a liquidated sum or one capable of mathematical calculation" and is supported by "detailed affidavits establishing the necessary facts." *UA Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979); *see also Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981) (Damages may be determined at the default judgment stage without a hearing if "the amount claimed is a liquidated sum or capable of mathematical calculation."); *Chanel, Inc. v. Jermaine Wrice*, No. 5:13-cv-891, 2015 WL 521144, at *6 (N.D. Ohio, Feb. 9, 2015) ("The Court may rely on affidavits submitted by plaintiffs in support of damages without the need for a hearing" where plaintiffs sought statutory damages, and there was a basis for awarding same.) The statutory damages sought by Plaintiffs – $1,000 per infringing product under the DMCA – are capable of mathematical calculation and therefore do not require a hearing.

Defendant Meadows' refused to respond to discovery or otherwise participate in this case. However, through Rule 45 subpoenas, Plaintiffs were able to obtain documents from Defendant Meadows' merchant service providers and financial institutions for purposes of identifying and quantifying the number of Device Codes sold by Defendant Meadows and in turn calculate statutory damages. The account records provided to Plaintiffs pursuant to those third party subpoenas show that Defendant Meadows sold at least 7,424 Device Codes. (*See* Craven Decl. ¶¶ 11-14, Exs. 3-9.) Therefore, statutory damages should be awarded in the amount of $7,424,000 (7,424 x $1,000).

The requested damages are reasonable and conservative for several reasons.

*First*, with respect to the payment processing services that were considered in calculating damages (PayPal, Square, and Zelle), not all transactions in those account records are included.

8

(Craven Decl. ¶¶ 11-15.) Rather, only transactions referencing the purchase of Device Codes and transactions which correspond with the prices at which Device Codes were offered on Defendant Meadows' Facebook were included. (*Id*.) Defendant Meadows received thousands of other similar payments that were excluded when calculating the number of Device Codes sold, but which more than likely represented the sale of additional Device Codes. (*Id*. ¶ 15.) While these thousands of other sales were most likely for the same Device Codes, STBs, PSDs, and infringing Pirate Services, Plaintiffs excluded them for purposes of calculating statutory damages unless there was a direct reference to the infringing codes or a price match. (*Id*.) If Defendant Meadows had participated in this action and responded discovery concerning the payments that he received, more extensive violations of section 1201(a)(2) claim could have been established, and damages increased proportionally.

*Second*, the $1,000 per violation requested by DISH and Sling is substantially less than the statutory maximum of the DMCA's damages range. 17 U.S.C. § 1203(c)(3)(A) (up to $2,500 per item). District courts applying the DMCA have wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima. *Peer Int'l Corp. v. Pausa Records, Inc.,* 909 F.2d 1332, 1336 (9th Cir. 1990). When determining the amount of damages to be awarded for each violation, the willfulness of the conduct and need for deterrence may be considered. *See Sony Computer Entm't Am., Inc. v. Filipiak,* 406 F. Supp. 2d 1068, 1074-75 (N.D. Cal. 2005); *Tracfone Wireless, Inc. v. SND Cellular, Inc.,* 715 F. Supp. 2d 1246, 1261-62 (S.D. Fla. 2010).

Defendant Meadows' violations of the DMCA were willful. In the context of section 1201(a)(2), "willful" means acting with knowledge that the product at issue is designed or used for circumvention. *See Filipiak*, 406 F. Supp. 2d at 1075 (citing *Dolman v. Agee*, 157 F.3d 708,

715 (9th Cir. 1998)). Defendant Meadows sold thousands of Device Codes to customers and resellers allowing them to circumvent the security measures employed by Sling's DRM technologies protecting Sling Programming. (Compl. ¶ 1, 38-40, 42; Craven Decl. ¶ 11-14.) And, Defendant Meadows' Facebook advertising emphasized converting customers from television services such as those provided by Plaintiffs saying "PREMIUM, PPV, AND SPORTS CHANNELS INCLUDED . . . $10 A Month . . . Why Pay More? Cut The Cord and Your Bill!" (Compl. ¶ 14; Craven Decl. ¶ 11(a), Ex. 3.) Defendant Meadows did not sell Device Codes by accident, but rather for the purpose of financial gain.

*Third*, Defendant Meadows has continued selling Device Codes throughout the pendency of this lawsuit. The records produced by his merchant service providers show that Defendant Meadows continued to sell Device Codes through October 2022, a year after suit was filed. (Craven Decl. ¶ 16, Exs. 5, 7-8.) Plaintiffs' last round of subpoenas to those merchant service providers was in October 2022, so it is probable that Defendant Meadows continues to sell Device Codes to this day, notwithstanding being sued and receiving at least three cease and desist letters from Plaintiffs. (*Id.*)

*Finally*, Plaintiffs are not requesting any attorney's fees or costs, both of which are expressly allowed under the statute, for Defendant Meadows' violations of the DMCA. *See* 17 U.S.C. § 1203(b)(3)-(5). Accordingly, additional monetary relief is available to Plaintiffs but such relief is not being requested in the default judgement.

Awarding Plaintiffs damages of $7,424,000 is therefore reasonable in this case. *See DISH Network L.L.C. v. Digital TV Cre, S.R.L.*, No. 4:17-cv-02711, Dkt. 22 (S.D. Tex.) (granting default judgment and awarding $249,757,500 under the DMCA, assessed at $2,500 per violation); *EchoStar Satellite L.L.C. v. Global Techs., Inc.*, No. 2:07-cv-05897-JZ-PLA, Dkt. 279 (C.D. Cal.)

(granting summary judgment and awarding $626,260,000 under the DMCA, assessed at $2,500 per violation) (attached to Craven Decl. at Exs. 11-12.)

### C. Plaintiffs Should be Awarded a Permanent Injunction Against Defendant Meadows

The DMCA expressly allows for permanent injunctive relief. *See* 17 U.S.C. § 1203(b)(1). In order to receive a permanent injunction, Plaintiffs must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiffs satisfy each requirement.

#### 1. Plaintiffs are Irreparably Harmed and Have No Adequate Remedy at Law

The Sixth Circuit recognizes that loss of reputation and goodwill, and lost profits each constitute irreparable harm. *See Langley v. Prudential Mortg. Capital Co., LLC,* 554 F.3d 647, 649 (6th Cir. 2009) ("[T]his court has recognized that a loss of business goodwill may constitute irreparable harm because of the difficulty in calculating damages."); *see also Basicomputer Corp. v. Scott,* 973 F.2d 507, 512 (6th Cir. 1992) (finding irreparable harm where there was a realistic prospect of lost sales and market share and there was harm to movant's goodwill). Plaintiffs are irreparably harmed by Defendant Meadows' violations of the DMCA and have no adequate legal remedy for at least two reasons.

*First*, Plaintiffs lose revenues and market share to an extent that cannot be fully determined. (*See* Gedeon Decl. ¶ 8.) Defendant Meadows assists customers in receiving Sling Programming without purchasing the requisite subscription or obtaining authorization from DISH or Sling. (*Id.* ¶ 3.) Quantifying Plaintiffs' loss that results from Defendant Meadows' misconduct is impractical

11

as the number of Defendant Meadows' customers that received Sling Programming without authorization, and would have otherwise properly subscribed through Sling, is not easily determined. (*Id.* ¶ 8.) Absent an injunction, there is nothing to stop Defendant Meadows from continuing to sell preloaded STBs, preloaded PSDs, and Device Codes.[1] Thus, the harm resulting is irreparable and cannot be completely corrected by an award of monetary damages. *See Dillion*, 2012 WL 368214, at *4 (finding irreparable harm in analogous case because "[i]t would be very difficult to quantify Plaintiffs' lost revenue"); *Coxcom, Inc. v. Chaffee*, 536 F.3d 101, 112 (1st Cir. 2008) (granting permanent injunction and finding irreparable harm in light of the relative inability to detect cable piracy and the magnitude of lost revenues).

*Second*, piracy harms Plaintiffs' business reputation and goodwill. (Gedeon Decl. ¶ 9.) Plaintiffs' business reputations are built on and depend on delivering television programming to authorized subscribers in a secure manner. (*Id.*) Defendant Meadows, by assisting his customers and resellers in circumventing Sling's security technology and receiving Sling Programming without authorization through the Pirate Services, harms Plaintiffs' reputations and interferes with the contractual and prospective business relationships of Plaintiffs, including relationships with channel providers that license their programming to Plaintiffs. (*Id.*) Calculating Plaintiffs' reputational harm and lost sales caused by Defendant Meadows is inherently difficult, if not impossible. (*Id.*) Based on the evidence of his continued sales even after suit was filed, Defendant Meadows has demonstrated that we will not stop absent behing permanently enjoined. (*See supra* FN #1.)

---

[1] Plaintiffs sent cease and desist letters to Defendant Meadows on June 21, 2021, October 15, 2021, and November 4, 2022. (Craven Decl. ¶ 16; Gedeon Decl. ¶ 7.) Account records provided to Plaintiffs pursuant to third party subpoenas served on Defendant Meadows' merchant service providers show that Defendant Meadows was continuing to sell Device Codes through October 2022. (Craven Decl., Exs. 5, 7-8.)

For this additional reason, Plaintiffs are irreparably harmed and the remedies available at law, such as monetary damages, are inadequate to completely compensate Plaintiffs for that injury. *See Dillion*, 2012 WL 368214, at *4 (finding irreparable harm in part because "piracy harms the reputation of Plaintiffs" and "[i]t would be very difficult to quantify Plaintiffs'…reputational damage and make Plaintiffs whole"); *Macrovision v. Sima Prods, Corp.*, No. 05 Civ 5587 (RO), 2006 WL 1063284, at *3 (S.D.N.Y. Apr. 20, 2006) ("If [plaintiff] is unable to prevent the circumvention of its technology, its business goodwill will likely be eroded, and the damages flowing therefrom extremely difficult to quantify.").

### 2. The Balance of Hardships and Public Interest Favor an Injunction

Plaintiffs will be irreparably harmed without an injunction for the reasons stated above. In contrast, an injunction will only cause Defendant Meadows to cease from profiting from his unlawful conduct, which should not be given any weight in this balancing of hardships. *See Lakedreams v. Taylor*, 932 F.2d 1103, 1110 n.12 (5th Cir. 1991) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration.") (quoting *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988)); *Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 829 (9th Cir. 1997) (finding that profits lost from the enjoined sale of infringing goods is not a recognizable harm). Accordingly, the balance of hardships tips decidedly in favor of granting a permanent injunction.

Likewise, it is beyond debate that the public interest is served by enjoining activities that violate federal law. *See Dillion*, 2012 WL 368214, at *5 ("[T]he public has a strong interest in the enforcement of anti-piracy legislation."); *Coxcom*, 536 F.3d at 112 ([T]he fourth factor, the public interest, further supports the issuance of the injunction: the public has an interest in the

enforcement of federal statutes."). The requirements for a permanent injunction are therefore satisfied.

### III.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for default judgement and order as follows:

1. Defendant Meadows is liable on Counts I-II of Plaintiffs' complaint alleging violations of 17 U.S.C. §§ 1201(a)(1)(A); 1201(a)(2);

2. Plaintiffs are awarded $7,424,000 in statutory damages against Defendant Meadows for his violations of section 1201(a)(2);

3. Defendant Meadows' violations of 17 U.S.C. §§ 1201(a)(1)(A); 1201(a)(2) warrant a permanent injunction barring Defendant Meadows, and any officer, agent, servant, employee, or other person acting in active concert or participation with any of them that receives actual notice of the order, from:

   A. circumventing a DRM or any other technological protection measure that controls access to Sling Programming, including through the use of the Pirate Services or any similar internet streaming service;

   B. manufacturing, importing, offering to the public, providing, or otherwise trafficking in any technologies, products, or services, including the preloaded STBs, PSDs, and subscriptions or device codes to the Pirate Services, or any other service, technology, product, device, component, website, or part thereof that:

   i. is primarily designed or produced for circumventing a technological measure employed by Plaintiffs that controls access to, copying, or the distribution of copyrighted works;

        b.    has only limited commercially significant purpose or use other than circumventing a technological measure employed by Plaintiffs that controls access to, copying, or the distribution of copyrighted works;

        c.    is marketed for purposes of circumventing a technological measure employed by Plaintiffs that controls access to, copying, or the distribution of copyrighted works;

        C.    receiving or assisting others in receiving Sling's internet transmissions; and

        D.    selling, leasing, licensing, assigning, conveying, distributing, loaning, encumbering, pledging, or otherwise transferring, whether or not for consideration or compensation, any part of Defendant Meadows' infringing operations.

**Respectfully submitted this 1st day of February, 2023.**

        /s/ Kristeena L. Johnson
Kristeena L. Johnson
Spencer K. Gray
DINSMORE & SHOHL LLP
100 West Main Street, Suite 900
Lexington, Kentucky 40507
Phone: (859) 425-1000
Fax: (859) 425-1099
Email: kristeena.johnson@dinsmore.com
        spencer.gray@dinsmore.com
and

Christopher P. Craven (*pro hac vice*)
HAGAN NOLL & BOYLE LLC
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Phone: (713) 343-0478
Fax: (713) 758-0146
Email: christopher.craven@hnbllc.com

*Counsel for Plaintiffs DISH Network L.L.C. and Sling TV L.L.C.*

## CERTIFICATE OF SERVICE

It is hereby certified that on the 1st day of February, 2023 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record through the ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participant:

James Dustin Meadows
918 Capital Hills Drive
Jeffersonville, IN 47130

/s/ Kristeena L. Johnson
*Counsel for Plaintiffs*
*DISH Network L.L.C. and Sling TV L.L.C.*